Jimmie H. WOODSON, Appellant,

v.

Jack M. FULTON, etc., et al., Appellees.

Nos. 79–1003, 79–1009.

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 8, 1979.

Decided Feb. 7, 1980.

George Wm. Warren, IV, Richmond, Va. (Francis, Hubard, Tice & Warren, Richmond, Va., on brief), for appellant.

D. Eugene Webb, Jr., Richmond, Va. (Andrew J. Ellis, Jr., Barbara Tessin Jones, Mays, Valentine, Davenport & Moore, Richmond, Va., on brief), for appellee Jack M. Fulton.

Matthew N. Ott, Jr., Ott, Morchower, Thompson & McMullan, Richmond, Va., on brief, for appellee Col. Frank S. Duling.

Michael Morchower, Ott, Morchower, Thompson & McMullan, Richmond, Va., on brief, for appellee Cap. S. J. Wood.

Before WINTER and HALL, Circuit Judges, and PERRY,* District Judge.

WINTER, Circuit Judge:

We must decide if a suit filed by Jimmie Woodson, a black former police officer of the city of Richmond, Virginia, alleging various forms of racial discrimination in employment is barred in whole or in part by an earlier decree in a class action suit. To the extent relevant here, the district court ruled that the decree in the class action suit was *res judicata* of the individual suit. We reverse in part and remand for further proceedings.

I.

Woodson filed two suits against Richmond police bureau officials, which were later consolidated, alleging that disciplinary actions taken against him while he was employed by the bureau violated, *inter alia*, 42 U.S.C. § 1983. His complaint also alleged that he was discriminatorily fired from the bureau. Before Woodson's suit could progress to trial, a consent decree was entered in a civil rights class action brought by Richmond's black police officers.

On a defense motion for summary judgment made after the entry of the class action consent decree, the district court dismissed Woodson's individual suit. The court ruled that some of Woodson's claims were moot, that some were barred by the statute of limitations, and that the consent decree was *res judicata* of the rest. Woodson does not seriously challenge the district judge's rulings on mootness and the statute of limitations.[1]

Woodson does contend, however, that he was not bound by the class action consent decree, which settled the claims of "all present Black employees" and "all future employees and applicants" of the bureau. He points out that he was fired and ceased to be a "present employee" before the class was defined. Woodson therefore insists that he was excluded from the class and that consequently his remaining claims are not barred by the *res judicata* effect of the consent decree.

II.

We agree with the district judge that Woodson was a member of the class, because he was not dismissed from the bureau until after the class action was filed and thus at the time of filing was a "present employee."[2] Nevertheless, for the reasons that follow, we think that one important aspect of Woodson's individual suit, the claim based upon his dismissal, was not litigated in the class action and it may therefore be asserted in the individual suit.

Woodson's complaint may be broken into two parts. First, he raises a number of alleged violations of his civil rights and due process based upon his treatment while he was a Richmond police officer. He asserts that he was subject to discriminatory disci-

---

* Hon. Matthew J. Perry, United States District Judge for the District of South Carolina, sitting by designation.

1. In his first suit, Woodson requested the district court to enjoin bureau officials from disciplining him without due process of law. The district court held that this request was moot, because Woodson was no longer a bureau employee. The district court also ruled that several of Woodson's claims were barred by the statute of limitations because they were based on events which occurred over two years prior to the filing of his complaint. The district court evidently applied the Virginia personal injury statute of limitations to Woodson's civil rights claims. *See Almond v. Kent*, 459 F.2d 200 (4 Cir. 1972). We affirm both these rulings.

2. Woodson argued that he was not a member of the class because he was fired on November 15, three days before the district court defined the class. However, the date of filing is the critical date in a class action for determining the members of the class, not the date of class definition. *See Philadelphia Electric Co. v. Anaconda American Brass Co.*, 42 F.R.D. 324 (E.D.Pa.1967). Woodson was a bureau employee when the class complaint was filed on June 11, 1974.

   Woodson also argued that he was not a member of the class because he never received formal notice of the action. Woodson was well aware of the class litigation and contributed money toward the expenses of litigation. In these circumstances, he cannot complain of lack of notice.

plinary actions and that his professional advancement was illegally hindered.

This aspect of his suit was fully litigated in the class action. The class action charged the bureau with discriminating against blacks in hiring, discipline, and promotions. The consent decree awarded class members damages for this discrimination and set up departmental procedures to avoid similar employment discrimination in the future. Although Woodson has thus far refused to accept an award under the decree, Woodson, according to its terms, is entitled to receive $800.

■ Second, Woodson charged that his discharged violated a variety of his constitutional rights. On its face, the consent decree seems to extinguish this discriminatory discharge claim, in addition to Woodson's other claims. The decree recites that "all existing claims for pecuniary relief of any kind against the defendants . . . are hereby dismissed with prejudice" and that class members will receive their cash payments "upon execution of releases of liability against defendants by all such members."

However, when the district court defined the class, it explicitly ruled that the class action would not address issues arising from allegedly discriminatory discharges. In its memorandum opinion articulating its views, the court stated:

Any possible injunctive or declaratory relief the Court may order with respect to hiring, promotion, placement, and the like would naturally affect present and future employees of the Richmond Bureau of Police. Such relief would not affect the former employees or applicants since their interest must naturally be confined to the possible recovery of back pay. This Court,

mindful of the narrow ancillary interest of former employees and applicants for employment and concerned with fair and adequate protection of that interest, must limit the proposed class by excluding such persons.[3]

Thus, under the terms of the district court's ruling, while the class representatives could adequately represent Woodson's interests as a bureau employee who had been subject to allegedly discriminatory disciplinary actions, the class representatives could not adequately represent him as to his discriminatory discharge claim. The effect of the district judge's ruling was to exclude claims based upon illegal discharges, including Woodson's from the subject matter of the suit.

In our view, this definition of the scope of the class action prevents the consent decree from settling Woodson's claim of discriminatory discharge. Therefore, Woodson may press his claim that he was fired in a manner which violated federal civil rights statutes and the constitution.[4] At the same time, since his other statutory and constitutional claims were settled by the class action, Woodson may accept the $800 he was awarded under the decree, but he may not relitigate those claims.

## III.

■ In addition to appealing the district judge's dismissal of his suit, Woodson objects to the district judge's refusal to allow him to amend his complaint. Immediately before trial, on the same day that the district court ruled that res judicata barred Woodson's suit, Woodson's attorney attempted to salvage his case by amending the complaint to include a First Amendment claim. The district court determined

---

3. The order entered to carry out the views expressed in the opinion provided in pertinent part that:

Defendants' motion to limit the class actions is granted with respect to the groups of persons comprising . . . "all past Black employees and applicants for employment with the Richmond Bureau of Police," and said classes are excluded from this action.

4. It is significant that the final decree in the class action suit, while prescribing future disciplinary procedures and enjoining future discriminatory discharges, provided no relief for any past discriminatory discharge. Judge Hall's dissent notwithstanding, if Woodson prevails in his individual suit, he will neither receive double recovery nor benefit from overlapping relief.

that Woodson's attorney had been aware of a possible First Amendment claim for some time and denied as untimely this last minute request for leave to amend. While leave to amend should be liberally granted, it may be denied for undue delay. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). On the facts of this case, the district judge did not abuse his discretion by denying Woodson leave to amend.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

K. K. HALL, Circuit Judge, concurring in part, and dissenting in part:

I would affirm the judgment of the district court holding all of Woodson's claims barred by *res judicata.*

We agree that Woodson was a member of the *Richmond Black Police Officers'* class, as certified. He had adequate notice of the class litigation; he personally contributed toward its legal fees. Yet he candidly admitted in his deposition that when offered his share of the class action settlement, he would await the outcome of his own concurrent lawsuit before deciding whether to accept the offer.

Woodson's complaint alleged a "vast number" of discriminatory administrative actions touching on different aspects of his employment, including promotional opportunities, transfer, off-duty work, sick leave, discipline and discharge. The *Richmond Black Police Officers'* suit similarly alleged discrimination in virtually every aspect of department personnel policy, expressly including discipline and discharge.

Judge Warriner's order limiting the Black Police Officers' class did not expressly exclude discriminatory discharge claims. The allegedly unconstitutional disciplinary procedures by which Woodson was discharged were unquestionably a subject of the consent decree. Woodson's counsel conceded in oral argument that the class action suit remained broad enough throughout to encompass all of Woodson's claims.

The record shows that Woodson was a member of the class, had ample notice, and was ready and willing to use the class action to obtain his recovery in the event his personal action failed. I think we ignore important policies underlying class actions when we allow a plaintiff, in effect, to present his claim in two simultaneous lawsuits and choose the one yielding the better result. Moreover, the majority opinion goes beyond what the plaintiff sought, or could have hoped for. Woodson brought this appeal to extricate himself from the class action or otherwise avoid the effect of the consent decree. Instead, the majority gives him full recovery as a class member *and* a private suit over the same subject matter as well.

I respectfully dissent.