**SWEETHEART PLASTICS, INC., Appellant,**

v.

**DETROIT FORMING, INC., Appellee.**

**No. 83–1988.**

United States Court of Appeals, Fourth Circuit.

Argued April 4, 1984.

Decided Sept. 13, 1984.

Bernard L. Sweeney, Falls Church, Va.
(Terrell C. Birch, Birch, Stewart, Kolasch &
Birch, Falls Church, Va., on brief), for appellant.

Wellington M. Manning, Jr., Spartanburg, S.C. (Manning & Wilburn, Spartanburg, S.C., on brief), for appellee.

Before WIDENER, PHILLIPS and CHAPMAN, Circuit Judges.

CHAPMAN, Circuit Judge:

In this action for injunctive relief for false designation of origin under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) and unfair competition, plaintiff Sweetheart Plastics, Inc. (Sweetheart) appeals from the judgment entered on the jury verdict in favor of defendant Detroit Forming, Inc. (Detroit). Sweetheart claims the district court erred in: (1) denying Sweetheart's motion to amend its complaint; (2) refusing to admit evidence of actions taken by Sweetheart against other manufacturers of substantially similar designs, and then charging the jury to consider whether Sweetheart, by taking no action against other manufacturers, acquiesced in the manufacture of the dishes by others or abandoned its rights; (3) admitting evidence of the existence of other manufacturers of similar designs; (4) charging the jury that evidence of Sweetheart's delay in taking action against other infringers could be considered relevant to Detroit's defenses of estoppel by acquiescence and abandonment; (5) submitting Detroit's defenses to the jury; and (6) refusing to grant a continuance of the trial. Finding that the district court abused its discretion in refusing to permit Sweetheart to amend its complaint under the circumstances; erred in charging the jury that the evidence of Sweetheart's failure to control other manufacturers could be considered relative to Detroit's defenses of estoppel by acquiescence and abandonment; and erroneously submitted the defense of abandonment to the jury, we reverse and remand.

## I

This action concerns a series of four disposable plastic ice cream dishes which have

been marketed by Sweetheart for the past twenty-five years. Two are rowboat-shaped dishes for banana splits, and two are bowl-shaped dishes for sundaes. Sweetheart does not have a registered trademark on the dish designs,[1] but does own a registered trademark on the mark "Banana Boat." Sweetheart alleged in its complaint that by virtue of its having sold billions of the dishes, and spent considerable sums advertising and promoting them, the designs have come to identify its products as originating from a single source, Sweetheart.

During the 1960's a company called Van Brode Milling Company (Van Brode) marketed a boat-shaped plastic ice cream dish. This practice was discontinued when Sweetheart asked Van Brode to stop. More recently, three other companies marketed lines of plastic disposable ice cream dishes which were substantially similar in design to Sweetheart's line. These companies are Formfit Plastics, Inc. (Formfit), Douglas Stephens Plastics, Inc. (Douglas Stephens), and defendant Detroit. In addition to the instant litigation, Sweetheart has filed a companion case in the United States District Court for the District of New Jersey against Douglas Stephens.

On July 19, 1983, six days before trial commenced, Sweetheart received certain documents it had requested from Detroit on January 28, 1983. Although the documents were ones in which Detroit had claimed that trade secrets were contained, a stipulated protective order had been entered by the court on June 9, 1983 which provided that confidential documents filed with the court would be sealed and segregated in the court's files. One of the documents received by Sweetheart on July 19, 1983 was an invoice on which Detroit had described certain of its dishes as "Banana Boat Trays." On the first day of trial

Sweetheart moved to amend its complaint to include a count for trademark infringement under 15 U.S.C. § 1114(1). Detroit opposed the motion as untimely. The district court denied the motion, stating: "I deny your motion, plaintiff's motion, comes too late. If that's all the proof you've got, you should have had it before then."

Trial began on July 25, 1983. During cross-examination of one of Sweetheart's witnesses, counsel for Detroit was permitted to inquire, over Sweetheart's objection, as to Sweetheart's knowledge of the use by Van Brode of a design alleged by Detroit to be similar to one of the designs in question. Also over Sweetheart's objection, Detroit was permitted to publish deposition testimony of Stewart M. Graff, president of Douglas Stephens, and Norman Thrope, president of Formfit, which showed the use by both companies of dishes similar in design to the dishes manufactured by Sweetheart.

The district court then permitted counsel for Sweetheart, by way of cross-examination, to publish other portions of the same depositions which revealed acts taken by Sweetheart against the two companies. Specifically, the portion of the Thrope deposition published by Sweetheart showed that Sweetheart had notified Formfit that it was unhappy with Formfit's shipping of boat-shaped dishes, and considered Formfit's acts to be infringements on Sweetheart's trademark rights. The portion of the Graff deposition published by Sweetheart showed that Sweetheart asked Douglas Stephens to cease manufacturing rowboat-shaped dishes and subsequently brought suit in New Jersey against Douglas Stephens for manufacturing the products.

Later in Sweetheart's rebuttal case, the trial court permitted Sweetheart's president to testify that Sweetheart had complained to Van Brode about the boat-

---

1. Sweetheart's attempts to register its "marks;" i.e., its designs, on the Principal Register have been refused to date because in each case "the matter presented for registration constitutes a configuration of the goods and, as such, is merely descriptive of the goods. In the absence of evidence that it has a secondary meaning or has become distinctive as applied to the goods, it

may not be registered on the Principal Register." Sweetheart has been invited by the United States Patent and Trademark Office "to submit additional evidence of secondary meaning that clearly shows that the matter presented for registration has been promoted and is recognized as a trademark;" hence, this lawsuit.

shaped dish it produced, and that Van Brode thereafter stopped producing it. However, the trial judge prohibited Sweetheart from introducing in its rebuttal case evidence of the remedial actions taken by Sweetheart against Douglas Stephens and Formfit because there had been no formal adjudications in those actions.

Subsequently, the court instructed the jury to consider remedial actions taken by Sweetheart against the other manufacturers in determining whether Sweetheart acquiesced in the manufacture of similar dishes by others or abandoned its rights in the designs in question. These comments were reiterated when the district court, at the jury's request, recharged the jury as to Detroit's defenses.

## II

■ The initial question to be decided is whether the district court erred in denying Sweetheart's motion to amend its complaint. Detroit asserts Sweetheart could have included the count for trademark infringement in its complaint as originally filed, or moved to amend its complaint earlier because the words "Banana Boat" had previously appeared in certain documents which Detroit produced at the time it filed its answer and counterclaim. Detroit further contends it would have been unduly prejudiced if Sweetheart had been permitted to add a count for trademark infringement on the first day of trial.[2]

2. Detroit also asserts that the motion to amend was properly denied because Sweetheart could have pursued production of Detroit's confidential documents more vigorously, and adds that "there was never any request by Sweetheart subsequent to the protective order entered by the Court on June 9, 1983 for immediate production of the documents by Detroit." The "egregious" nature of these statements prompted Sweetheart to file with this Court a Motion to Strike these "offending" portions of Detroit's brief. The latter statement of Detroit to the effect that Sweetheart never requested the documents after June 9 was retracted by Detroit in a letter filed with this court and thus will not be considered for purposes of this appeal. As for Detroit's assertion that Sweetheart could have pursued production of Detroit's documents more vigorously, we find it unnecessary to grant Sweetheart's Motion to Strike because we find Detroit's claim of undue delay to be without

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend a pleading "shall be freely given when justice so requires." The United States Supreme Court has admonished that "this mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). In *Foman v. Davis*, the Court stated further,

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given." Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

Id. at 182, 83 S.Ct. at 230.

■ No apparent or declared reason for denial of the motion to amend exists in the

merit in this case. While unjustified delay on the part of a movant may constitute grounds to deny a motion to amend, *Woodson v. Fulton*, 614 F.2d 940 (4th Cir.1980), the record and the documents submitted by the parties with respect to the Motion to Strike reflect that Sweetheart was diligent in its efforts to conduct discovery and repeatedly offered to enter into a suitable protective order to secure the discovery of Detroit's confidential information. Although Sweetheart forwarded the stipulated protective order to Detroit on May 16, 1983 in the exact form later entered by the trial court, counsel for Detroit did not send the order to the district court until June 6, 1983. Moreover, though the protective order was entered by the court on June 9, 1983 Detroit did not produce the confidential documents until July 19, 1983. Once Sweetheart received the documents it promptly filed its motion to amend.

instant case. Detroit's assertion that Sweetheart should have included a count for trademark infringement in its complaint as originally filed is without merit. Rule 11 of the Federal Rules of Civil Procedure as it existed at the time Sweetheart's complaint was filed on January 28, 1983 provided in pertinent part:

> Every pleading of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated ... The signature of an attorney constitutes a certificate by him that he has read the pleading; that to the best of his knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay.[3]

Clearly, Sweetheart's counsel could not in good faith have included in his complaint a count for trademark infringement before he was aware of evidence to support such a claim. Such conduct would have violated both the letter and the spirit of Rule 11.

Detroit also asserts that Sweetheart could have moved to amend its complaint earlier because the mark "Banana Boat" appeared on certain documents submitted previously by Detroit. Detroit fails to cite to any evidence in the record which supports this contention. Our review of the record reveals only two documents, a blueprint drawing clearly designed for internal use by Detroit containing the words "Banana Boat Tray," and a letter to the secretary of Detroit from a distributor in which the distributor referred to Detroit's dishes as large and small "Banana Boat[s]." There was no evidence that this distributor ever used the term "Banana Boat" in the promotion or sale of Detroit's dishes. Rather, the evidence shows that soon after receipt of the letter Detroit's secretary admonished the distributor not to use the name "Banana Boat" with reference to Detroit's products, and that this instruction was heeded. Certainly, Sweetheart's knowledge of these documents was insufficient evidence upon which to base a claim for infringement of its trademark in connection with the sale and distribution of the dishes in interstate commerce. "Good ground" to support the claim under Rule 11 only came later, when Detroit produced an invoice containing the words "Banana Boat Trays" less than a week prior to trial.

■ Finally, the mere fact that the motion to amend was made the day of trial did not unduly prejudice Detroit so as to require denial of the motion. Absent prejudice to the opposing party, the mere fact that an amendment is offered late in the case is not enough to bar it. 3 J. Moore, Moore's Federal Practice § 15.08[4] (2d ed. 1984); *Howey v. United States*, 481 F.2d 1187 (9th Cir.1973); *Hanson v. Hunt Oil Company*, 398 F.2d 578 (8th Cir.1968). The district court made no finding of prejudice to Detroit, concluding only that "plaintiff's motion comes too late."

Moreover, the record fails to show any basis for finding that the proffered amendment would have unduly prejudiced Detroit under the circumstances. Sweetheart's original two counts for false designation of origin and unfair competition arise out of the sale and distribution by Detroit of plastic dishes having configurations which Sweetheart asserts are proprietary to it, including two boat-shaped dishes. The count for trademark infringement in connection with the sale and distribution of these dishes which Sweetheart sought to add by amendment is grounded on at least one of the same acts by Detroit that form the basis of the original two counts. Thus, Detroit has been aware since the filing of Sweetheart's complaint of the circumstances from which the trademark infringement count arose. Moreover, Detroit was in possession of the document which forms the basis of Sweetheart's motion to amend until six days before the motion was made,

---

**3.** This portion of Rule 11 was amended effective August 1, 1983. As amended the Rule emphasizes attorneys' responsibilities and provides for the imposition of sanctions where abuses in pleadings occur, which "should discourage dilatory or abusive tactics and help to streamline the litigation process by lessening frivolous claims or defenses." Fed.R.Civ.P. 11 advisory committee note.

and thus cannot be heard to complain of unfair surprise by the inclusion of the additional count. Under these circumstances, Detroit would not have suffered undue prejudice from the amendment of the complaint immediately prior to trial. Since Sweetheart could not have brought a claim for trademark infringement earlier because Detroit did not produce the evidence of infringement until a few days before trial, and since Detroit would not have been unduly prejudiced by the amendment, the district court's refusal to permit Sweetheart to amend its complaint was an abuse of discretion.

### III

■ In addition, Sweetheart argues that the district court committed prejudicial error by refusing to admit evidence of remedial actions taken by Sweetheart against other manufacturers, and then instructing the jury to consider whether Sweetheart, by taking no action against the third party manufacturers, acquiesced in the manufacture of its dish designs by others or abandoned its rights. Sweetheart admits that it was permitted to read into the record part of the Thrope deposition which established that Sweetheart had notified Formfit that it considered the marketing of boat-shaped dishes by Formfit as an infringement of Sweetheart's rights. However, Sweetheart asserts that all of its other efforts to introduce evidence of actions it took against the other manufacturers of boat-shaped dishes, Douglas Stephens and Van Brode, were "firmly and emphatically denied by the trial court." This contention is utterly without support in the record. The record reveals the trial court also permitted Sweetheart to publish the part of the Graff deposition showing remedial acts Sweetheart had taken against Douglas Stephens, and to introduce rebuttal evidence of remedial acts taken by Sweetheart against Van Brode. Thus, even if the trial court erred in refusing to permit Sweetheart to admit in its rebuttal case evidence of the remedial acts it took against Douglas Stephens and Formfit, such error was harmless because the evidence had previously been published

to the jury by Sweetheart. However, upon retrial the district court should allow Sweetheart full opportunity to prove all remedial actions taken against other manufacturers.

### IV

■ We also reject Sweetheart's argument that the trial court's admission of Detroit's evidence of the existence of other manufacturers of similarly designed dishes constituted prejudicial error. Evidence of the existence of manufacturers other than the defendant has certain relevance in this false designation of origin and unfair competition case. For example, with reference to a determination of whether Sweetheart had any proprietary rights in the unregistered designs of its dishes, evidence of the use of substantially identical designs by others was admissible as to the issue of whether secondary meaning attached to Sweetheart's designs. Such evidence is probative of the extent and nature of exclusivity of use by Sweetheart. *See Carter Wallace, Inc. v. Proctor & Gamble Co.,* 434 F.2d 794, 802 (9th Cir.1970); *Universal City Studios v. Nintendo Co.,* 578 F.Supp. 911, 926 (S.D.N.Y.1983); *Miller Brewing Co. v. Falstaff Brewing Corp.,* 503 F.Supp. 896 (D.C.Rhode Island 1980). Thus, the district court did not err in permitting the jury to consider evidence of the existence of third party manufacturers of substantially similar dishes.

### V

Related to Sweetheart's argument that the admission of Detroit's evidence of other manufacturers was prejudicial is it's contention that the trial court committed prejudicial error in instructing the jury to consider evidence of Sweetheart's delay in enjoining the other manufacturers in determining whether Sweetheart acquiesced in the use of the dish designs by others or abandoned its rights in the dish designs.

With respect to Detroit's defense of estoppel by acquiescence the trial court instructed the jury in part:

The defendant, thus, alleges that the plaintiff has acquiesced in such manufacture, sales by the other manufacturers and should now be estopped from asserting its rights, if any it has, in the design or configuration of its relevant containers against anyone, including this defendant.

If you should find from the preponderance of the evidence that others were manufacturing and selling containers very similar to the relevant containers of the plaintiff for a long period of time, and that plaintiff was aware of such manufacture and sale, then you must decide whether by taking no action against other manufacturers the plaintiff has agreed or acquiesced that the others can manufacture its very similar products. If you so decide, then the plaintiff may not now assert its rights against the defendant.

■■■■■ As distinguished from laches, acquiescence constitutes a ground for denial of relief only upon a finding of conduct on the plaintiff's part that amounted to an assurance to the defendant, express or implied, that the plaintiff would not assert his trademark rights against the defendant. *Carl Zeiss Stiftung v. Veb Carl Zeiss Jena,* 433 F.2d 686, 704 (2nd Cir.1970), *cert. denied* 403 U.S. 905, 91 S.Ct. 2205, 29 L.Ed.2d 680 (1971); *Exxon Corp. v. Humble Exploration Co., Inc.,* 524 F.Supp. 450, 467 (N.D.Tex.1981), *aff'd in part, rev'd and remanded in part,* 695 F.2d 96 (5th Cir.1983). Acquiescence may be inferred from the trademark owner's affirmative conduct toward the defendant. For example, in *Ambrosia Chocolate Co. v. Ambrosia Cake Bakery,* 165 F.2d 693 (4th Cir. 1947), *cert. denied* 333 U.S. 882, 68 S.Ct. 914, 92 L.Ed. 1157 (1948), not only was the plaintiff aware that the defendant was using the plaintiff's registered trademark "Ambrosia" for eight years but also the plaintiff attempted to sell ingredients to the defendant to be used in making "Ambrosia" cakes to be marketed under that name. The court found this to be "active encouragement" by the plaintiff to induce the defendant to sell its cakes under the name "Ambrosia", and injunctive relief was denied. Estoppel by acquiescence focuses on a plaintiff's acts toward the defendant, not toward other manufacturers. *See, e.g., id.* Although Sweetheart's delay in enjoining Detroit may be relevant to the question of whether Sweetheart acquiesced in Detroit's manufacture of the dishes in question, Sweetheart's delay in prosecuting infringers other than Detroit has no relevance to the defense of estoppel by acquiescence. While abandonment results in a loss of rights as against the whole world, laches or acquiescence is a personal defense which merely results in a loss of rights as against one defendant. 2 J.T. McCarthy, *Trademarks and Unfair Competition* § 31:14 at 587 (2d ed. 1984). Thus, assuming that Sweetheart established it had proprietary rights in its unregistered dish designs, the fact that Sweetheart may have delayed in enjoining other manufacturers from using the dish designs would not amount to an assurance to Detroit that Sweetheart would not assert its trademark rights against Detroit. The trial court's instruction that the jury should consider the acts of Sweetheart toward third party manufacturers of similar designs rather than the acts of Sweetheart toward Detroit in determining estoppel by acquiescence was therefore erroneous.

The question remains whether evidence of Sweetheart's delay in enjoining other manufacturers is relevant to a determination of the defense of abandonment. With respect to the evidence of Sweetheart's delay in enjoining other manufacturers, the court instructed the jury on abandonment:

If you should find from the preponderance of the evidence that the plaintiff knowingly permitted other manufacturers to use the designs without any control, then you would find that plaintiff had abandoned or lost such rights.

There has been little uniformity among the courts as to the impact of a plaintiff's failure to sue other infringers on the defense of abandonment. The line of cases relied on by Sweetheart states that evidence of a plaintiff's failure to sue other

infringers is totally irrelevant in an unfair competition case because "it is no excuse for [a defendant] to say that others have been guilty of the same wrong." *National Lead Company v. Wolfe*, 223 F.2d 195, 204 (9th Cir.1955); *United States Jaycees v. San Francisco Jr. Chamber of Commerce*, 354 F.Supp. 61, 73 (N.D.Cal.1972), *aff'd* 513 F.2d 1226 (9th Cir.1975) (and cases cited therein). Although this theory is appealing because no one should be exculpated from his own wrongful conduct merely because others are also guilty, the view "assumes that the case of infringement has already been proven and that failure to prosecute, and its possible impact on customer perception, is irrelevant to the issue of likelihood of confusion." 1 J.T. McCarthy, *Trademarks and Unfair Competition* § 17:5 at 778 (2d ed. 1984). As discussed previously, the evidence of Sweetheart's delay or failure to enjoin other manufacturers is not totally irrelevant in this case where Sweetheart has the burden of proving secondary meaning.

On the other hand, two of the cases relied on by Detroit, *Denison Mattress Factory v. Spring-Air Company*, 308 F.2d 403 (5th Cir.1962); *Sheila's Shine Products, Inc. v. Sheila Shine, Inc.*, 486 F.2d 114 (5th Cir.1973) are of no help in determining this issue. Those cases merely recognize the rule that a trademark owner's uncontrolled or "naked" licensing of a mark may result in the trademark ceasing to function as a symbol of quality and controlled origin, which has been characterized as abandonment. This rule of uncontrolled licensing of a trademark is inapplicable to the instant case as no evidence of licensing has been presented. The other case relied on by Detroit, *Saxlehner v. Eisener & Mendelson Co.*, 179 U.S. 19, 21 S.Ct. 7, 45 L.Ed. 60 (1900) does note the remedial actions taken by a trademark owner against other infringers in its discus-

sion of abandonment; however, *Saxlehner* is factually distinguishable from the instant case because in *Saxlehner* the plaintiff's mark "Hunyadi" was found to have become the generic name in this country for a type of water after others had used the name for twenty years without being sued by the plaintiff.

■ Section 45 of the Lanham Act, 15 U.S.C. § 1127(b) provides,

> A mark shall be deemed to be "abandoned"—(b) When any course of conduct of the registrant,[4] including acts of omission as well as commission, causes the mark to lose its significance as an indication of origin.

"Acts of omission" causing a mark to lose its significance as an indication of origin have been held to include failing to take action against infringers. *Wallpaper Mfgs. Ltd. v. Crown Wallcovering Corp.*, 680 F.2d 755, 766 (CCPA 1982). As noted by Professor McCarthy,

> [I]t appears that the only relevancy of failure to prosecute others is as to the possible impact such failure may have on the strength of the plaintiff's mark. It is possible that plaintiff's mark has been "weakened" by widespread use in the market and that such use resulted from plaintiff's failure to sue infringers .... Of course, if, through failure to prosecute, a mark continually loses "strength" and "distinctiveness", it will eventually hemorrhage so much that it dies as a mark. That would be "abandonment" through acts of omission ...
>
> In the typical trademark litigation, the relevance of failure to prosecute others is not to "abandonment", but to "strength". The issue is hardly ever "abandonment", because that requires proof that the mark has lost all significance as an indication of origin. That is,

---

4. That Sweetheart has not registered its dish designs does not make this statutory defense of abandonment inapplicable. Section 1127 provides that "the term 'mark' includes any trademark ... entitled to registration under this chapter whether registered or not." Certainly the design of an article can function to identify the source of the article and thus be protected as a trademark, e.g., *In re Morton-Norwich Products, Inc.*, 671 F.2d 1332, 1336 (CCPA 1982). Of course, if Sweetheart fails to establish it has proprietary rights in the designs, the defense of abandonment need not be considered.

the mark is completely without signs of life. The only relevance in the typical case of failure to prosecute others is as to the element of strength of the mark. That is, the mark is so crowded in by similar marks used by competitors that the mark is alive, but weakened.

1 J.T. McCarthy, *Trademarks and Unfair Competition* § 17:5 at 779–780 (2d ed. 1984) (citations omitted).

 The district court's instruction that the plaintiff abandoned its rights by having "knowingly permitted other manufacturers to use the designs without any control" is thus erroneous in this case which does not involve licensing by Sweetheart. Evidence of a trademark owner's failure to prosecute infringers is relevant to a determination of the defense of abandonment only where such failure amounts to the mark's losing significance as an indication of source. Id. at 779–780; 15 U.S.C. § 1127(b).

### VI

Finally, Sweetheart argues that, even assuming the court's charge regarding laches, acquiescence, and abandonment was correct, there was insufficient evidence upon which the jury could have found for Detroit and thus the defenses should not have been submitted to the jury. Sweetheart agrees with the portion of the charge on estoppel by acquiescence and laches which provided that Detroit had the burden of showing detrimental reliance, but contends Detroit presented no evidence that it relied to its detriment on Sweetheart's delay in bringing suit. However, the president of Detroit testified that his company advertised its ice cream dishes by preparing window banners, a sales flyer, and certain sales letters. Sums for such advertising would not have been expended had Detroit not relied on Sweetheart's two and one-half year delay in complaining to Detroit.

In addition, Sweetheart agrees with the portion of the charge relative to the abandonment defense which provided that Detroit must show discontinuance of use by Sweetheart and intent not to resume the use of its trademark to prove actual abandonment. However, Sweetheart contends the defense of abandonment should not have gone to the jury since no evidence of either discontinuance of use or intent was shown by Detroit.

 As mentioned previously, discontinuance of use, though the typical evidence, is not always required for a finding of abandonment. A party may be deemed to have abandoned a valid trademark by permitting such excessive adverse use of a mark that it has lost its significance as an indication of origin. 15 U.S.C. § 1127(b); 1 J.T. McCarthy, *Trademarks and Unfair Competition*, § 17:5 (2d ed. 1984). In the instant case no evidence was presented that Sweetheart had discontinued its use of the dish designs since it began manufacture of the dishes in 1957. Although Detroit presented evidence that two other manufacturers, Formfit and Douglas Stephens, manufactured dishes of substantially similar designs for approximately five years, Sweetheart presented evidence that it took remedial action against each of these third party manufacturers. In the absence of any evidence that the adverse use of the dish designs was so extensive that the designs lost their significance as an indication of source, the court's permitting the jury to consider the defense of abandonment was erroneous.

In light of our decision to reverse, it is unnecessary for us to decide whether the district court erred in refusing to grant a continuance of the trial.

REVERSED AND REMANDED.