**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

No. 22-1643

_____

In re:  LUMBER LIQUIDATORS CHINESE-MANUFACTURED FLOORING PRODUCTS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION.

------------------------------

CARLA J. KAPPEL, as mother and next friend of K.I.T, a minor and A.J.T, a minor as Special Administrator of the Estate of Ozan Tarabus, deceased,

Plaintiff – Appellant,

v.

LL FLOORING, INC., f/k/a Lumber Liquidators, Inc.,

Defendant – Appellee.

_____

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  Anthony John Trenga, Senior District Judge.  (1:15-md-02627-AJT-MSN; 1:20-cv-02825-AJT-IDD)

_____

Argued:  December 7, 2023                                   Decided:  January 17, 2024

_____

Before WILKINSON, KING, and HEYTENS, Circuit Judges.

_____

Vacated and remanded by published opinion.  Judge King wrote the opinion, in which Judge Wilkinson and Judge Heytens joined.  Judge Wilkinson wrote a concurring opinion.

---

**ARGUED:** Kenneth Gordon Anspach, ANSPACH LAW OFFICE, Chicago, Illinois, for Appellants.  Halli D. Cohn, TROUTMAN PEPPER HAMILTON SANDERS LLP, Atlanta, Georgia, for Appellee.  **ON BRIEF:** Robert J. Augenlicht, LAW OFFICE OF ROBERT J. AUGENLICHT LLC, Chicago, Illinois; Kathleen Holmes, HOLMES COSTIN & MARCUS PLLC, Alexandria, Virginia, for Appellant.  Michael E. Lacy, TROUTMAN PEPPER HAMILTON SANDERS LLP, Richmond, Virginia, for Appellee.

---

2

KING, Circuit Judge:

Plaintiff Carla J. Kappel, as mother and next friend of the children of Ozan Tarabus, deceased, and as Special Administrator of his Estate, initiated this Illinois wrongful death lawsuit in an Illinois state court in July 2020 against defendants LL Flooring, Inc., formerly known as Lumber Liquidators, Inc. Plaintiff Kappel's wrongful death lawsuit, having been removed from the state court to the Northern District of Illinois — and thereafter transferred to the Eastern District of Virginia — was dismissed in May 2022. *In re Lumber Liquidators Chinese-Manufactured Flooring Products Mktg., Sales Practices and Products Liab. Litig.*, No. 1:20-cv-2825 (E.D. Va. May 13, 2022), ECF No. 49 (the "Dismissal Order"). The district court predicated its dismissal of Kappel's wrongful death lawsuit on the proposition that the claim was barred by a settlement agreement that had been made in connection with two multidistrict litigation ("MDL") actions conducted in the Eastern District of Virginia. Those MDL actions had resolved various consumer protection claims relating to LL Flooring's products. Kappel appeals from the Dismissal Order.

On appeal, Kappel presents two primary contentions: (1) that the district court lacked subject matter jurisdiction to make and enter the Dismissal Order; and (2) that the MDL settlement agreement relied on in the Dismissal Order did not bar Kappel's wrongful death lawsuit on behalf of the children. As explained herein, the court possessed subject matter jurisdiction. We are satisfied, however, that Kappel should prevail on her second contention and that her wrongful death lawsuit must be reinstated. The Dismissal Order is therefore vacated, and Kappel's lawsuit is remanded for further proceedings.

3

I.

A.

In 2015, a series of civil actions — pursued both individually and as class actions — were filed against LL Flooring in various jurisdictions in the United States and related to the sale and marketing of LL Flooring's Chinese-manufactured laminate flooring. More specifically, multiple plaintiffs alleged that:

> Despite being marketed as compliant with regulations of the California Air Resources Board and other applicable regulations . . . [the] laminate flooring emits illegal and unsafe levels of formaldehyde, a known carcinogen.

*See* J.A. 182.[1] Additionally, a series of allegations were made in the pre-MDL proceedings concerning deficient durability and longevity of the laminate flooring marketed and sold by LL Flooring. In June 2015, the various individual and class actions lodged against LL Flooring were centralized and transferred to the Eastern District of Virginia, pursuant to order of the Judicial Panel on Multidistrict Litigation (the "JPML").

The MDL proceedings in the Eastern District of Virginia were thereafter divided into two MDLs, one titled the "Formaldehyde MDL" (1:15-md-2627 (E.D. Va.)) and the other titled the "Durability MDL" (1:16-md-2743 (E.D. Va.)). On September 18, 2015, the class representatives for the Formaldehyde MDL filed an amended complaint and alleged 12 causes of action, which included, inter alia, fraudulent concealment, breach of

---

[1] Citations herein to "J.A. ___" refer to the contents of the Joint Appendix filed by the parties in this appeal.

4

implied warranty, negligent misrepresentation, and violations of assorted unfair business practice laws. About two weeks later, on September 30, 2015, LL Flooring moved to strike from the amended class action complaint in the Formaldehyde MDL all class claims for personal injuries. After discussions with the parties, the district court denied the motion to strike as moot, in that the parties had agreed that "no Chinese formaldehyde class action pending in the MDL will seek damages for personal injury on a class-wide basis." *See* J.A. 104. Notably, no wrongful death claims were pursued on a class basis in the Formaldehyde MDL.

In February of 2017, the class representatives for the Durability MDL filed their class action complaint. It alleged 10 causes of action, including, inter alia, breach of implied warranties, fraudulent concealment, and violations of assorted unfair business practice statutes. Like the class representatives in the Formaldehyde MDL, the class representatives in the Durability MDL did not pursue any claims for personal injury or wrongful death.

On March 15, 2018, after mediation proceedings, a class action settlement agreement was reached between the class representatives of each MDL and with LL Flooring, resolving all class action claims in each MDL (the "Settlement Agreement"). Funded by the sum of $36 million, the Settlement Agreement provided that the class members would each receive a portion of what they had paid for LL Flooring products, by way of cash payments and vouchers.

5

In the Settlement Agreement, the parties summarized the earlier motion to strike the personal injury claims in the Formaldehyde MDL and its resolution by the district court as follows:

> [LL Flooring] filed a motion to dismiss all personal injury claims asserted in class action complaints. Plaintiffs subsequently agreed and the Court ordered that no Chinese formaldehyde class action pending in the Formaldehyde MDL will seek damages for personal injury *on a class-wide basis*.

*See* J.A. 111 (emphasis added).

Pursuant to the Settlement Agreement, "Class Member[s]" were defined as "all persons in the United States who purchased Chinese-made laminate flooring from [LL Flooring] between January 1, 2009, and May 31, 2015." *See* J.A. 116. If a Class Member was not otherwise excepted from that definition, the Settlement Agreement included a broad release of claims. That is, the Settlement Agreement released LL Flooring from the following:

> [A]ny and all claims . . . that have been, could have been, or in the future can or might be asserted in any court . . . (including but not limited to any . . . personal injury claim) . . . related to Chinese-manufactured laminate flooring sold by [LL Flooring] between January 1, 2009 and May 31, 2015.

*See* J.A. 142-43. The Settlement Agreement also provided that, if a Class Member was not to be bound by the Settlement Agreement and its release of claims, the Member "must submit a written Request for Exclusion." *See* J.A. 132.

On June 15, 2018, the district court entered an order that preliminarily approved the Settlement Agreement. The parties then implemented the proposed class notice plan of the Settlement Agreement. On October 9, 2018, the court certified the various classes for settlement purposes and approved the Settlement Agreement (the "Final Approval Order").

6

The Final Approval Order explained that the court "retains its jurisdiction for purposes of enforcing the Settlement Agreement . . . and also its jurisdiction over those class members who have opted out of the settlement classes certified herein." *See* J.A. 178.

On January 31, 2019, the district court entered an Order of Dismissal and Judgment (the "MDL Order"). The MDL Order differed slightly from the Final Approval Order, however, and did not contain any explicit language retaining jurisdiction to enforce the Settlement Agreement. The MDL Order provided, however, that both MDLs would remain open for "future opt-out cases that are transferred" by the JPML. *See* J.A. 180. On appeal, we approved the fairness and adequacy of the Settlement Agreement. *See In re: Lumber Liquidators Chinese-Manufactured Flooring Products Mktg., Sales Practices and Products Liab. Litig.*, 952 F.3d 471 (4th Cir. 2020).

B.

On December 14, 2014, the now deceased Mr. Tarabus, who resided in Illinois, purchased laminate flooring that had been manufactured and sold by LL Flooring. Tarabus installed the laminate flooring himself in his residence in January 2015. After installing the laminate flooring, Tarabus experienced serious health problems. He was soon afflicted with breathing issues and thus needed to use a CPAP machine. His health seriously deteriorated, and in April 2017 Tarabus was diagnosed with inoperable Stage 4 liver and pancreatic cancer. He began receiving chemotherapy treatments and was hospitalized in June 2018. Later that month, Tarabus's doctors ceased his chemotherapy treatments because they were ineffective. Before the end of June, the doctors informed Tarabus that he was about to pass away, and he entered hospice care on June 27, 2018. Tarabus's

7

medical treatments thereafter focused only on managing his pain, including the use of morphine and OxyContin.

Two days after entering hospice care, on June 29, 2018, Mr. Tarabus received an email notice from LL Flooring that sought to advise him of the Settlement Agreement. The notification email — had Tarabus read it — asserted that Tarabus was a Class Member because he had purchased LL Flooring's products during the applicable time period. And the email sought to inform Tarabus of his opt-out rights with respect to the Settlement Agreement. The email was followed by an identical paper copy from LL Flooring, sent by regular mail, on June 30, 2018. Tarabus passed away on July 18, 2018, at the age of 48. In the 19 days that Tarabus was alive after receiving notice of the Settlement Agreement, he did not seek to opt out. And no one opted him out of the Settlement Agreement before or after he died. Tarabus is survived by two minor children — aged 15 and 13 at the time of his death — plus his ex-wife, plaintiff Kappel.[2]

## C.

On July 20, 2020, Kappel, as mother and next friend of Mr. Tarabus's two minor children, filed her one-count complaint against LL Flooring, which alleged a single wrongful death claim on behalf of the children, under the Illinois Wrongful Death Act. Her wrongful death lawsuit was filed in the Circuit Court of Cook County, Illinois, and it

---

[2] The foregoing facts about Mr. Tarabus and his health problems are drawn from Kappel's complaint. Like the district court, we "accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *See Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

alleged that Tarabus had contracted cancer as the proximate result of his exposure to LL Flooring's laminate flooring — which contained formaldehyde — resulting in his untimely death.

On August 31, 2020, LL Flooring removed Kappel's wrongful death lawsuit from the state court to the Northern District of Illinois. The removal notice was predicated on diversity of citizenship jurisdiction — pursuant to 28 U.S.C. § 1332 — with Kappel and the two children being citizens of Illinois, and LL Flooring being incorporated in Delaware and having its principal place of business in Virginia. The notice of removal alleged that the amount in controversy exceeded the jurisdictional sum of $75,000. Kappel did not dispute the jurisdictional allegations.

On September 1, 2020, LL Flooring filed a "Notice of Tag-Along Action" before the JPML, representing that Kappel's Illinois lawsuit was "identical in all material respects" to the Formaldehyde MDL. *See* J.A. 99. As a result, the JPML transferred Kappel's wrongful death lawsuit to the Eastern District of Virginia. Kappel was then given a seven-day window to object to the transfer, and she did not object.

On September 25, 2020, LL Flooring moved in the Eastern District of Virginia for dismissal of Kappel's wrongful death lawsuit under Rule 12(b)(6), for failure to state a claim upon which relief can be granted or, in the alternative, for summary judgment. LL Flooring represented to the court that the deceased Mr. Tarabus was a Class Member and that he — along with Kappel — had failed to opt out of the Settlement Agreement by the court-ordered deadline. As a result, LL Flooring asserted that Tarabus had assented to the Settlement Agreement and its broad release. As LL Flooring saw it, Tarabus — by failing

9

to opt out of the Settlement Agreement — had settled all of his claims arising from LL Flooring's defective laminate flooring, which barred Kappel's wrongful death lawsuit on behalf of his children. Stated differently, LL Flooring maintained that Kappel could not pursue her wrongful death lawsuit because Tarabus had already "settled" his claims that LL Flooring's defective laminate flooring caused his death.

Kappel pursued several counterarguments in the district court, which included, inter alia, (1) that the court was without jurisdiction, and (2) that Kappel's wrongful death lawsuit on behalf of Mr. Tarabus's children was not barred because no class representative in either MDL had ever pursued any claims alleging that the laminate flooring caused personal injury or death. Otherwise stated, Kappel maintained that a subset of claims had not been settled — that is, claims that LL Flooring's products had caused Tarabus to suffer personal injury or death — more specifically, that Kappel's wrongful death lawsuit simply was not barred.

After initial briefing, the district court conducted a hearing on whether the Settlement Agreement was binding on the wrongful death claim of Mr. Tarabus's minor children. By its Dismissal Order of May 13, 2022, the court agreed with LL Flooring, and ruled (1) that it had retained jurisdiction over subsequent actions transferred to the MDL for purposes of enforcing the Settlement Agreement, (2) that Tarabus was a Class Member and therefore subject to the Settlement Agreement, and (3) that because Tarabus was subject to the Settlement Agreement, his claims had been settled, including any claims involving bodily injuries or death caused by the subject flooring. Thus, the Dismissal Order ruled that the wrongful death claim being pursued in Kappel's lawsuit was barred.

10

The court also conducted an "excusable neglect" analysis of whether Kappel could seek relief from the opt-out deadline, and ruled that the circumstances did not warrant relief.

The Dismissal Order thus dismissed Kappel's wrongful death lawsuit and the court entered judgment in favor of LL Flooring. Kappel timely noted this appeal, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

We review de novo a district court's dismissal of a complaint, accepting all well-pleaded facts as true and drawing all reasonable inferences in favor of the plaintiff. *See Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). We also review de novo a district court's ruling on a jurisdictional issue. *See Vitol, S.A. v. Primerose Ship. Co. Ltd.*, 708 F.3d 527, 533 (4th Cir. 2013). An issue concerning the potential preclusive effect of a settlement agreement is a question of law, which is also assessed de novo. *See United States ex rel. May v. Purdue Pharma L.P.*, 737 F.3d 908, 912 (4th Cir. 2013).

## III.

On appeal, Kappel maintains that the district court's dismissal of her complaint was erroneous because, inter alia, (1) the court lacked subject matter jurisdiction, and (2) the Settlement Agreement did not resolve her claim that LL Flooring's products caused Mr. Tarabus bodily injuries and death, and thus did not dispose of Kappel's wrongful death lawsuit. As explained below, we are satisfied that the court possessed subject matter

11

jurisdiction. We nevertheless agree with Kappel's major appellate contention, and herein rule that the Settlement Agreement failed to resolve Kappel's wrongful death lawsuit.

## A.

By her first contention, Kappel maintains that the district court erroneously decided that it possessed subject matter jurisdiction over her wrongful death complaint. According to Kappel, the MDL Order did not expressly provide that it was retaining jurisdiction over disputes arising under the Settlement Agreement. In response, LL Flooring makes two arguments: (1) that the court had retained ancillary jurisdiction under its Final Approval Order, which was incorporated into the MDL Order; and (2) that the court possessed diversity of citizenship jurisdiction. In disposing of the jurisdictional issue, the court ruled that it had retained subject matter jurisdiction by way of ancillary jurisdiction.

Ancillary jurisdiction is a theory that "recognizes federal courts' jurisdiction over some matters (*otherwise beyond their competence*) that are incidental to other matters properly before them." *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 378 (1994) (parenthetical in original, emphasis added). Ancillary jurisdiction is therefore usually a fallback, and applies when a court otherwise lacks subject matter jurisdiction. *See Kokkonen*, 511 U.S. at 378; *Fairfax Countywide Citizens Ass'n v. Fairfax Cnty., Va.*, 571 F.2d 1299, 1303 (4th Cir. 1978) (recognizing that district court is not empowered to enforce settlement agreement "unless the agreement had been approved and incorporated into an order of the court, or . . . *there exists some independent ground upon which to base federal jurisdiction*." (emphasis added)). In this situation, we will not rely on the ancillary

12

jurisdiction theory, because we are readily satisfied that the district court possessed diversity of citizenship jurisdiction, codified in 28 U.S.C. § 1332.

Kappel's wrongful death lawsuit was initiated in the Illinois state court and removed to the Northern District of Illinois on diversity of citizenship grounds. The facts supporting removal and recited in the removal notice included the following: (1) Kappel is a citizen of Illinois; (2) LL Flooring is a citizen of Delaware and Virginia; and (3) the amount in controversy exceeds $75,000. Kappel did not challenge those allegations or otherwise seek a remand to the Illinois state court. LL Flooring then secured a transfer of Kappel's wrongful death lawsuit from the Northern District of Illinois to the Eastern District of Virginia under 28 U.S.C. § 1407. But § 1407 of the Code is not a jurisdictional statute. It is a venue-giving provision "that allows the JPML to override a plaintiff's choice of forum," and thus transfer a lawsuit to the district court that is handling the MDL. *See Pinney v. Nokia, Inc.*, 402 F.3d 430, 451 (4th Cir. 2005). In this situation, even if there were sound arguments against the JPML's transfer to Virginia, they were merely venue contentions, and they did not undermine the Virginia court's subject matter jurisdiction. Furthermore, Kappel never sought a remand and agrees that there is diversity jurisdiction. *See* Br. of Appellant at 44.

Put simply, the district court in Virginia possessed subject matter jurisdiction over Kappel's wrongful death lawsuit — predicated on diversity of citizenship under 28 U.S.C. § 1332. The court thus had no need to rely on an ancillary jurisdiction theory, and we need not resolve whether the MDL Order retained ancillary jurisdiction over Kappel's wrongful death lawsuit.

13

B.

1.

The principal issue on appeal is thus whether the preclusive effect of the Settlement Agreement applies to Kappel's wrongful death lawsuit.  Again, this dispute is relevant because the district court reasoned that Kappel's wrongful death lawsuit was settled and reduced to judgment because all claims against LL Flooring regarding its defective laminate flooring were covered by the Settlement Agreement.  Kappel contends, however, that her wrongful death lawsuit is not barred, in that no class representative of the settlement classes had ever pursued personal injury or wrongful death claims on a class basis.  And LL Flooring counters by pointing to the terms of the Settlement Agreement qualifying Mr. Tarabus as a Class Member and stating that LL Flooring is released from "all claims . . . relating to Chinese-manufactured laminate flooring sold by Lumber Liquidators between January 1, 2009 and May 31, 2015." *See* J.A. 142-43.

When a federal court enters a judgment that is predicated on a release of claims, we have recognized that the scope of the judgment's preclusive effect is a "legal question governed by federal common law and subject to de novo review." *See United States ex rel. May v. Purdue Pharma L.P.*, 737 F.3d 908, 912 (4th Cir. 2013).  And when a civil action has been dismissed under a settlement agreement, the preclusive effect of a dismissal judgment "can be no greater than the preclusive effect of the agreement itself." *Id.* at 913.

To assess and decide the preclusive scope of a class action settlement, we turn to the so-called "identical factual predicate" doctrine.  *See McAdams v. Robinson*, 26 F.4th 149, 160 (4th Cir. 2022); *Berry v. Schulman*, 807 F.3d 600, 616 (4th Cir. 2015).  That

14

doctrine has roots in the 1981 decision of the Second Circuit in *National Super Spuds, Inc. v. New York Mercantile Exchange*. *See* 660 F.2d 9 (2d Cir. 1981). Rejecting an overbroad settlement release, Judge Friendly therein recognized that, "[i]f a judgment after trial cannot extinguish claims not asserted in the class action complaint, a judgment approving a settlement in such an action ordinarily should not be able to do so either." *See Natl. Super Spuds, Inc*, 660 F.2d at 18. A footnote of this influential opinion elaborated, recognizing that the factual predicate for the settlement controls the scope of the claims it settles. Important here, the *Super Spuds* decision explicitly acknowledged that a release can be circumscribed by its factual predicate. Observing that the release in *Super Spuds* was overly broad, Judge Friendly emphasized that:

> The settlement before us would bar . . . others . . . asserting claims, distinct from those represented by the class action plaintiffs, which depend not only upon a different legal theory *but upon proof of further facts.*

*Id.* 18 n.7 (emphasis added).

In 1982, the "identical factual predicate" doctrine was further explained and recognized by the Second Circuit. *See TBK Partners, Ltd. v. W. Union Corp.*, 675 F.2d 456, 460 (2d Cir. 1982) ("As long as the overall settlement is found to be fair and class members were given sufficient notice and opportunity to object to the fairness of the release, we see no reason why the judgment upon settlement cannot bar a claim that would have to be based on the identical factual predicate as that underlying the claims in the settled class action."). The identical factual predicate doctrine has spread to other circuits,

15

including our Court. *See Berry*, 807 F.3d at 616 (4th Cir. 2015).[3] We have recognized that, in order to have an identical factual predicate, the claims must "depend upon *the very same set of facts*." *See McAdams*, 26 F.4th at 160 (emphasis added). And the identical factual predicate doctrine makes good sense. As the Second Circuit has recognized:

> Parties often reach broad settlement agreements encompassing claims not presented in the complaint in order to achieve comprehensive settlement of class actions, particularly when a defendant's ability to limit his future liability is an important factor in his willingness to settle.

*See In re Literary Works in Elec. Databases Copy. Litig.*, 654 F.3d 242, 247-48 (2d Cir. 2011). But to authorize and approve a class settlement that seeks to settle materially distinct and non-litigated claims goes too far. As aptly put by Judge Friendly:

> An advantage to the class, no matter how great, simply cannot be bought by the uncompensated sacrifice of claims of members, whether few or many, which were not within the description of claims assertable by the class.

*See Natl. Super Spuds*, 660 F.2d at 19. Indeed, as the Supreme Court has recognized, an uncircumscribed ability to settle non-litigated claims would run headlong into "our deep-rooted historic tradition that everyone should have his own day in court," and would present serious due process concerns. *See Martin v. Wilks*, 490 U.S. 755, 762 (1989).

---

[3] At least six other circuits — the First, Second, Third, Sixth, Seventh, and Ninth — recognize and apply the identical factual predicate doctrine, and its effect on settlement agreements. *See Reppert v. Marvin Lumber and Cedar Co.*, 359 F.3d 53, 58-59 (1st Cir. 2004); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 106 (2d Cir. 2005); *Freeman v. MML Bay State Life Ins. Co.*, 445 F. App'x 577, 579 (3d Cir. 2011); *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 349 (6th Cir. 2009); *Williams v. Gen. Elec. Capital Auto Lease, Inc.*, 159 F.3d 266, 269 (7th Cir. 1998); *Williams v. Boeing Co.*, 517 F.3d 1120, 1133 (9th Cir. 2008).

Even before the Second Circuit's *Super Spuds* decision, we had recognized and applied the wisdom of carefully limiting the preclusive effect of a class action settlement. *See Woodson v. Fulton*, 614 F.2d 940 (4th Cir. 1980). In our *Woodson* case, a police officer had pursued an individual civil action in the Eastern District of Virginia against the City of Richmond's police bureau, alleging (1) discriminatory treatment as an employee — e.g., discriminatory discipline and hindering of advancement — and (2) discriminatory discharge. *See* 614 F.2d at 941. Prior to Woodson's lawsuit, a class action had already been pursued against the same police bureau for discriminatory treatment of its employees. That class action had been — before Woodson's lawsuit — settled by a consent decree. *Id.* During the pre-Woodson class action proceedings, the district court "explicitly ruled that the class action would not address issues arising from allegedly discriminatory discharges." *Id.* at 942. Despite that explicit limitation, Woodson's claims were all dismissed — including his discriminatory discharge claim — as barred by the earlier class action consent decree. *Id.* Our Court, in an opinion by Judge Winter, reversed the district court, ruling that although Woodson was a member of the class, his discriminatory discharge claim was not barred by the consent decree, because the "definition of the scope of the class action prevents the consent decree from settling Woodson's claim of discriminatory discharge." *Id.*

2.

With those legal principles in mind, we return to and resolve the issues relating to Kappel's wrongful death lawsuit. When LL Flooring first argued that the preclusive effect of the Settlement Agreement barred Kappel's wrongful death lawsuit in the district court,

17

Kappel responded that the claims for bodily injury and death being pursued on behalf of Mr. Tarabus and his children were materially distinct from all the claims in the MDL proceedings, and thus not covered by the Settlement Agreement.[4]  As we have recognized, "[w]hether the release covers claims not alleged in the class action complaint is for a court enforcing the release to decide."  *See McAdams*, 26 F.4th at 161.  Indeed, several other courts of appeals have recognized that the identical factual predicate doctrine can apply after a settlement has been approved.  *See, e.g.*, *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010); *Reppert v. Marvin Lumber and Cedar Co., Inc.*, 359 F.3d 53, 58 (1st Cir. 2004).

Here, the scope of the class claims and the facts underlying the class complaints conclusively show that the Settlement Agreement did not settle claims premised on bodily injury or wrongful death.  The class claims included allegations focused on the quality of the subject flooring and on LL Flooring's deception in its sales and marketing. Undoubtedly, Mr. Tarabus is a Class Member who failed — under unique circumstances — to opt out of the Settlement Agreement.  And he did not otherwise meet any exceptions specified in the Settlement Agreement.  As a result, the Settlement Agreement may have resolved consumer claims (or factually identical claims) that could have been pursued on

---

[4] It was entirely reasonable and proper for Kappel to liken her wrongful death lawsuit to a personal injury claim.  As Illinois law recognizes, its Wrongful Death Act cures an unjust feature of the common law, which barred a personal injury action when the injured party died of her injuries.  *Williams v. Manchester*, 888 N.E.2d 1, 10 (Ill. 2008) (citing 740 Ill. Comp. Stat. 180/1 (2002)).  That is, the Illinois Wrongful Death Act generally extends liability for common law wrongful acts "notwithstanding the death of the person injured."  740 Ill. Comp. Stat. 180/1 (2023).

18

behalf of Tarabus.  But the issue before us is not about claims related to deceptive sales or marketing.  Our question is whether the preclusive effect of the Settlement Agreement reaches Kappel's Illinois wrongful death claim on behalf of the two children.

As a general rule, consumer protection claims — such as fraudulent concealment and violations of state unfair business practice laws — are not likely to "depend upon the very same set of facts" as personal injury or wrongful death claims, because there are distinct factual inquiries.  *See McAdams*, 26 F.4th at 160.  This appeal is a striking example. The allegations in Kappel's wrongful death lawsuit concern the bodily injuries Mr. Tarabus experienced and the contaminated laminate flooring's causal connection to his cancer diagnosis.  Although there are shared factual allegations with the consumer class claims — i.e., LL Flooring had marketed and sold flawed flooring products — the class representatives notably failed to allege that any member of the class had experienced bodily injuries or death.

Important here, the settlement class representatives at least twice made clear that they were not pursuing personal injury claims on a class-wide basis.  On April 5, 2016, the court ordered that a motion seeking to strike personal injury claims from the class action complaint was moot because the class representatives had agreed that they would not "seek damages for personal injury on a class-wide basis."  *See* J.A. 104.  And the Settlement Agreement memorialized that fact.  It was agreed therein that no "class action . . . will seek damages for personal injury on a class-wide basis."  *See* J.A. 111.  Of great importance, at no point did any class representative ever allege or pursue a wrongful death lawsuit.

19

In these circumstances, our situation is quite similar to that faced by Judge Winter and his fellow panelists more than 40 years ago in the *Woodson* case. The *Woodson* class action expressly excluded claims predicated on a different factual universe, and therefore could not settle such claims. *See* 614 F.2d at 942. Because the class representatives to the Settlement Agreement in these proceedings failed to allege that the laminate flooring produced and sold by LL Flooring caused personal injuries or deaths, Kappel's wrongful death claim for the benefit of Mr. Tarabus's children could not "depend upon the very same set of facts" as the settled class claims. *See McAdams*, 26 F.4th at 160. Thus, the preclusive effect of the Settlement Agreement does not reach Kappel's wrongful death lawsuit.[5]

## IV.

Pursuant to the foregoing, we vacate the Dismissal Order and corresponding judgment of the district court and remand for such other and further proceedings as may be appropriate.

*VACATED AND REMANDED*

---

[5] On December 1, 2023, a few days before our oral argument of this appeal, LL Flooring moved our Court for judicial notice of six docket entries in the Formaldehyde MDL, pursuant to Federal Rule of Evidence 201. For reasons appearing to the Court, that motion is denied.

WILKINSON, Circuit Judge, concurring:

I concur in the majority opinion because I am persuaded that it does no serious damage to the basic utility of class action releases. While class actions are often justifiably criticized as, inter alia, benefitting attorneys rather than class members, this form of Federal Rule 23 litigation aids both plaintiffs and defendants. Plaintiffs, because individual class members may lack the resources to bring their own suit. Defendants because they are spared the trickle of individual suits based on the same basic set of facts and claims.

To restrict releases unduly risks undermining the utility of an important tool in class action litigation, one which assists the settlement of claims and alleviates the need for go-for-broke trials. I do not understand the majority to say that releases cannot bar claims that have not been brought or fully litigated, but only those claims that lie distinctly outside the ambit of the class action proper. I likewise do not understand the majority to announce a per se rule that a release in every products liability suit necessarily allows subsequent actions for injuries arising from the product itself. Rules that broad could well drain all meaning from the release. I trust that the "identical factual predicate" doctrine will be applied with the facts of the particular litigation foremost in mind and with due respect for the lubricative role that releases play in beneficial class action settlements.

With that understanding, I concur in the majority opinion.

21