**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 21-1087**

———————

PIA MCADAMS,

Appellant,

v.

DEMETRIUS ROBINSON; TAMARA ROBINSON,

Plaintiffs – Appellees,

v.

NATIONSTAR MORTGAGE LLC,

Defendant – Appellee.

-------------------------------

NATIONAL CONSUMER LAW CENTER; MOUNTAIN STATE JUSTICE, INC.,
CONSUMERS LEAGUE OF NEW JERSEY; CONNECTICUT FAIR HOUSING
CENTER; NORTHWEST CONSUMER LAW CENTER,

Amici Supporting Appellant.

———————

Appeal from the United States District Court for the District of Maryland, at Greenbelt.
Timothy J. Sullivan, Magistrate Judge.  (8:14−cv−03667−TJS)

———————

Argued:  October 28, 2021                    Decided:  February 10, 2022

———————

Before DIAZ and THACKER, Circuit Judges, and Thomas T. CULLEN, United States
District Judge for the Western District of Virginia, sitting by designation.

Affirmed by published opinion. Judge Diaz wrote the opinion, in which Judge Thacker and Judge Cullen joined.

**ARGUED:** Michael T. Houchin, LAW OFFICES OF RONALD A. MARRON, APLC, San Diego, California, for Appellant. Jonathan K. Tycko, TYCKO & ZAVAREEI LLP, Washington, D.C.; Erik Wayne Kemp, SEVERSON & WERSON, San Francisco, California, for Appellees. **ON BRIEF:** Ronald A. Marron, LAW OFFICES OF RONALD A. MARRON, APLC, San Diego, California; Thomas J. Minton, GOLDMAN & MINTON, P.C., Baltimore, Maryland, for Appellant. Dia Rasinariu, TYCKO & ZAVAREEI LLP, Washington, D.C., for Appellee Tamara Robinson. Jan T. Chilton, SEVERSON & WERSON, San Francisco, California, for Appellee Nationstar Mortgage LLC. Scott C. Borison, BORISON FIRM LLC, Baltimore, Maryland; Jennifer S. Wagner, MOUNTAIN STATE JUSTICE, Morgantown, West Virginia, for Amici Curiae.

DIAZ, Circuit Judge:

This case arises from a class action alleging that Nationstar Mortgage LLC violated federal and state consumer-protection laws in servicing the class members' mortgage loans. Following protracted litigation, Nationstar, and the Robinsons negotiated a $3,000,000 settlement. Pia McAdams, a class member, objected to the settlement, arguing that the class notice was insufficient; the settlement was unfair, unreasonable, and inadequate; the release was unconstitutionally overbroad; and the attorneys' fee award was improper. A magistrate judge (acting on a referral by the district court) overruled McAdams's objections. On appeal, McAdams raises those same challenges and questions the magistrate judge's jurisdiction. We affirm.

I.

Demetrius and Tamara Robinson filed a class action against Nationstar in the District of Maryland in 2014. The Robinsons claimed Nationstar violated federal and state law by, among other things, failing to timely acknowledge receipt of class members' loss mitigation applications,[1] respond to the applications, and diligently obtain documents to complete them.

The parties litigated the case for nearly six years. In 2020, the Robinsons and Nationstar filed a notice of settlement and a joint motion to proceed before a magistrate judge. The magistrate judge (who had mediated the settlement), granted a motion for

---

[1] "A loss mitigation application is a request from a borrower to change the terms of their payment obligations to avoid delinquency or foreclosure." J.A. 27.

preliminary approval of the settlement and scheduled a fairness hearing before final approval.

The negotiated settlement created a relief fund of $3,000,000. In order of priority, the parties proposed that the fund pay for (1) administrative expenses up to $300,000, (2) attorneys' fees, (3) a service award to the class representative—Demetrius Robinson, and (4) class claims. Any remainder would go to a nonprofit that advocates for consumers.

The administrative expenses included the cost of providing class members with notice of the settlement. The settlement proposed three types of notice—Email, Postcard, and Longform. Both the Email and Postcard Notice informed class members of the amount of the settlement fund, how to submit a claim, how to opt out of the class, and where to find the Longform Notice. The Longform Notice notified class members of the attorneys' fee arrangement. The notices didn't estimate the recovery for each class member.

As for attorneys' fees, Nationstar agreed (in a so-called "clear sailing" provision) not to oppose class counsel's fee request so long as it didn't exceed $1,300,000. Class counsel submitted records accounting for over 3,000 billable hours. Using the District of Maryland's presumptively reasonable rates, the records supported $1,261,547.50 in fees. Class counsel also submitted proof of $217,657.26 in unreimbursed expenses, for a total of $1,479,204.76 in costs and fees. But counsel requested only a $1,300,000 award.

The value of a class member's claim is determined by a points system. Class members receive points for answering two questions—the first about Nationstar's treatment of their mortgage account and the second about expenses the class member incurred. The settlement funds remaining, after deducting administrative expenses,

4

attorneys' fees, and the class representative's service award, are divided by the number of points claimed. That number is then multiplied by a class member's points to arrive at the settlement share for each claimant.

The proposed settlement also includes a release of claims. It provides:

> Upon entry of the Final Approval Order and Judgment, each Settlement Class Member . . . will be deemed to have completely released and forever discharged the Released Parties, and each of them, from all actions . . . that were or could have been asserted by the Class Representative or Class Members in connection with the submission of loss mitigation applications during the Class Period.

J.A. 186.

McAdams, an absent class member[2] who had sued Nationstar in California state court,[3] objected to the settlement. She argued that the class notice was insufficient; the settlement was unfair, unreasonable, and inadequate; the release was unconstitutionally overbroad; and the attorneys' fee award was improper.

---

[2] An "absent class member" is one who isn't named in the complaint. *Frank v. Goas*, 139 S. Ct. 1041, 1045 (2019). Courts sometimes refer to absent class members as "unnamed class members" or "nonnamed class members." *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1804 (2018); *Devlin v. Scardelletti*, 536 U.S. 1, 6 (2002).

[3] In that suit, McAdams asserted five claims against Nationstar: "(1) violation of California's Homeowner Bill of Rights; (2) intentional misrepresentation; (3) negligent misrepresentation; (4) promissory estoppel; and (5) violation of California's Unfair Competition Law." *McAdams v. Nationstar Mortg. LLC*, No. 20-cv-2202, 2021 WL 4462909, at *1 (S.D. Cal. Sept. 29, 2021). Those claims arose from Nationstar's alleged "dual tracking" of her loan modification application. *Id.* "Dual tracking occurs when [a] servicer moves forward with foreclosure while simultaneously working with the borrower to avoid foreclosure." *Wilkins v. Wells Fargo Bank, N.A.*, 320 F.R.D. 125, 129 n.1 (E.D. Va. 2017) (internal quotation marks omitted)

The magistrate judge overruled McAdams's objections. The judge found that both the distribution and content of the notice were sufficient because over 97% of the nearly 350,000 class members received notice. He also found that class members "had information to make the necessary decisions and . . . the ability to even get more information if they so desired." J.A. 815. In support of that finding, the judge noted the low number of objectors (2), the low opt-out rate (.04%), and the high claims rate (13.8%).[4]

Turning to the settlement terms, the magistrate judge found them fair, reasonable, and adequate. The judge considered the three relevant criteria under Federal Rule of Civil Procedure 23(e)(2)(C) and addressed the five adequacy factors from *In re Jiffy Lube Securities Litigation*, 927 F.2d 155, 159 (4th Cir. 1991). The judge found: (1) "plaintiffs ha[d] viable claims"; (2) "Nationstar had very strong defenses"; (3) litigating the case to trial "would have likely been lengthy and it would certainly be quite, quite expensive"; (4) "Nationstar can pay the 3 million dollars"; and (5) "[o]nly 137 class members have opted out of the settlement, which is about 0.04 percent of the settlement class." *See* J.A. 810–14.

---

[4] Whether a claims rate is high partially depends on class members' expected recovery. *See Rawa v. Monsanto Co.*, 934 F.3d 862, 866–68 (8th Cir. 2019) (finding a 13% claims rate "considerably high" for a settlement refunding the purchase of weed killer); *Ward v. Flagship Credit Acceptance LLC*, No. 17-2069, 2020 WL 759389, at *10–13 (E.D. Pa. Feb. 13, 2020) (calling 20.5% "a very high claims rate" where class members could have received a maximum of $900 but on average recovered $22.17); *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1044 (S.D. Cal. 2015) (stating a claims rate of 7.7% was "higher than average" for an expected recovery of $13.75); *see also Roes,1–2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1046 n.7 (9th Cir. 2019) (calling an 18.5% claims rate "low" where the class members "stood to receive hundreds of dollars").

The magistrate judge also addressed the breadth of the settlement's release. He found the release was "not too broad" because a class settlement can release "claims based on the identical factual predicate[,] even if those claims" aren't presented. J.A. 816. But he didn't opine whether the release would bar class members' pending claims in other jurisdictions, including McAdams's California lawsuit.

Finally, the magistrate judge approved the proposed $1,300,000 attorneys' fee request. The fee, he said, was based on a presumptively reasonable rate, and using that rate, counsel had shown that their actual costs and fees exceeded their request. The judge noted that concerns over Nationstar's agreement not to object to the settlement were misplaced. And he found "no collusion" between the parties because they negotiated the settlement "at arm's length in the midst of contentious litigation." J.A. 812, 817.

This appeal followed.

## II.

McAdams first attacks the magistrate judge's jurisdiction to approve the class action settlement, alleging that she didn't consent to have a magistrate judge hear her case. There's no dispute that the magistrate judge could approve the class action and enter judgment only by consent of the parties. 28 U.S.C. § 636(c). McAdams asserts that "parties" for purposes of § 636(c) include absent class members, like her. This is a question of first impression in this circuit. But every other circuit to address the issue has concluded that absent class members aren't parties. *Koby v. ARS Nat'l Servs., Inc.*, 846 F.3d 1071, 1076 (9th Cir. 2017); *Day v. Persels & Assocs., LLC*, 729 F.3d 1309, 1316 (11th Cir. 2013);

7

*Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 181 (3d Cir. 2012); *Williams v. Gen. Elec. Cap. Auto Lease, Inc.*, 159 F.3d 266, 269 (7th Cir. 1998). We now join them, holding that the magistrate judge had jurisdiction to approve the settlement.

A.

We review questions of law de novo, including questions of statutory interpretation. *In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Pracs. & Prods. Liab. Litig.*, 952 F.3d 471, 483 (4th Cir. 2020). Similarly, "[w]e review . . . a lower court's determination of its subject-matter jurisdiction[] de novo." *Barlow v. Colgate Palmolive Co.*, 772 F.3d 1001, 1007 (4th Cir. 2014) (en banc).

B.

"We begin, as always in deciding questions of statutory interpretation, with the text." *Othi v. Holder*, 734 F.3d 259, 265 (4th Cir. 2013). 28 U.S.C. § 636(c) authorizes magistrate judges to "conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case . . . . [u]pon the consent of the parties." Congress didn't define "parties" in § 636. Nor has the Supreme Court said whether absent class members are parties in this context. *See Devlin v. Scardelletti*, 536 U.S. 1, 9–10 (2002) ("Nonnamed class members, however, may be parties for some purposes and not for others. The label 'party' does not indicate an absolute characteristic, but rather a conclusion about the applicability of various procedural rules that may differ based on context.").

"We give the words of a statute their ordinary, contemporary, common meaning, absent an indication Congress intended them to bear some different import." *Williams v. Taylor*, 529 U.S. 420, 431 (2000) (cleaned up). When Congress adopted the relevant

8

language in § 636, the ordinary meaning of "party" included those whose names are designated as a plaintiff or defendant and those who can control the proceedings. *See Day*, 729 F.3d at 1317. Absent class members aren't named parties, and they can't control proceedings. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 810 (1985) ("Unlike a defendant in a normal civil suit, an absent class-action plaintiff is not required to do anything. He may sit back and allow the litigation to run its course, content in knowing that there are safeguards provided for his protection."). So absent class members aren't within the contemporary, common meaning of the term "parties" as used in § 636.

Nor do we believe Congress intended absent class members to be parties. Interpreting "parties" to include absent class members would prevent magistrate judges from entering judgment against absent class members who haven't given their explicit consent. That reading "would virtually eliminate § 636(c) referrals to magistrate judges" by hindering the judgment's preclusive effect. *Williams*, 159 F.3d at 269.

Congress has limited the preclusive effect of judgments by restricting the definition of a party in other contexts. *See, e.g.*, 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."). But when it has done so, Congress has spoken clearly. Nothing in § 636 suggests Congress intended to limit the preclusive effect of judgments entered by magistrate judges.

McAdams doesn't account for the adverse practical effects of administering class actions if her reading were to prevail. The Ninth Circuit has observed that § 636 uses the term "parties" "multiple times in a way that cannot sensibly be read to include absent class

members" because "[t]he identities of all absent class members will often not be known until later in the case." *Koby*, 846 F.3d at 1076; *see, e.g.*, 28 U.S.C. § 636(c)(2) ("[T]he clerk of court shall, at the time the action is filed, notify the parties of the availability of a magistrate judge to exercise such jurisdiction."). "Even if the identities of all absent class members are known," it would be unduly burdensome on the clerk of court to compile all their contact information and prohibitively expensive "even for the most well-funded district courts." *Koby*, 846 F.3d at 1077.

This case exemplifies the need to have a practical system for administering class actions. The class here consists of almost 350,000 members. McAdams's reading of "parties" for purposes of § 636 would require notifying each of them of the intent to proceed before a magistrate judge. "We doubt Congress would have imposed these substantial budgetary and manpower burdens on clerks' offices across the country without making that intent explicit." *Id.* at 1077. And to what end? In this case, over 97% of class members received notice of the settlement. 13.8% submitted claims. Only .04% opted out. So over 80% of the class received notice but didn't act on it. Yet under McAdams's reading of § 636, the magistrate judge would be powerless to act.

Because the contemporary, common meaning of "parties" excludes absent class members and the statute lacks signs showing any legislative intent to classify them as such, we conclude "parties" as used in § 636 doesn't include absent class members. Since

Nationstar and the Robinsons consented to having the magistrate judge preside over the fairness hearing, McAdams's jurisdictional claim fails.[5]

III.

McAdams next asserts that the settlement notice was inadequate because it didn't include the attorneys' fees to be deducted from the settlement fund, estimate individual class members' recovery, or explain the distribution method.

The parties dispute our standard of review. We haven't spoken on this question, and our sister circuits are split. Two circuits review a district court's finding on the adequacy of class action notice for abuse of discretion. *Pollard v. Remington Arms Co.*, 896 F.3d 900, 905–06 (8th Cir. 2018); *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 438 (2d Cir. 2007). Three others review the issue de novo. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 946 (9th Cir. 2015); *DeJulius v. New England Health Care Emp. Pension Fund*, 429 F.3d 935, 942 (10th Cir. 2005); *Fidel v. Farley*, 534 F.3d 508, 513 (6th Cir. 2008). But even assuming de novo review is proper, the class notice was adequate.

---

[5] McAdams also complains that this case "presents a potentially serious conflict of interest" because the magistrate judge both mediated and approved the settlement. Appellant's Br. at 35. But she doesn't support that assertion. Nor did she preserve the issue for appeal. She didn't move for the judge's recusal or otherwise object. And a judge's recusal decision isn't a matter of subject-matter jurisdiction; it can be waived. *Flame S.A. v. Freight Bulk Pte. Ltd.*, 807 F.3d 572, 592 (4th Cir. 2015). Because McAdams takes a mere "passing shot" at the issue, we don't consider it. *Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017).

McAdams's challenge to the adequacy of the notice has both a constitutional and a procedural component. To bind an absent class member, notice to the class must provide "minimal procedural due process protection." *Phillips Petroleum Co.*, 472 U.S. at 811–12. "The [absent class member] must receive notice plus an opportunity to be heard and participate in the litigation." *Id.* at 812. That notice must be "reasonably calculated, under all the circumstances, to apprise [absent class members] of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

On the procedural front, Federal Rule of Civil Procedure 23(e) governs notice to absent class members. It requires "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). But it doesn't specify what the notice must say. Rather, the notice need only "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005) (cleaned up). Put another way, "Rule 23(e) requires notice that describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 946 (cleaned up).

Here, the magistrate judge approved three types of notice—Email, Postcard, and Longform.[6] The settlement administrator emailed notice to class members for whom it had an email address. It also mailed notice to class members for whom it had a physical address. And it searched the National Change of Address database to update the addresses for those whose Postcard Notice was returned as undeliverable. Both the Email and Postcard Notice informed class members that there was a $3,000,000 settlement fund, explained how to file a claim, and presented the option to opt-out. They also listed a website and telephone number where class members could get the Longform Notice.

The Longform Notice explained the settlement in greater detail. Among other things, it stated that class counsel intended to request up to $1,300,000 in attorneys' fees and costs, that this amount would be deducted before any payout to the class, and that class members submitting valid claims would receive proportionate shares of the settlement fund.[7] In other words, the Longform Notice included two of the three pieces of information—the attorneys' fees to be deducted from the settlement fund and the distribution method—which McAdams complains is missing.

---

[6] All three notices included either hyperlinked text or a URL to reach the class action website, where the class member could review the full settlement agreement.

[7] McAdams faults the notice for not explaining the settlement's points system. But a notice must "fairly apprise" class members; it need not give them every detail. *Wal-Mart Stores*, 396 F.3d at 114. The Longform Notice's statement that "[e]ach Settlement Class Member who files a valid claim will receive a proportionate share of the Settlement Fund remaining after [] deductions are made" is clear. J.A. 203. It doesn't promise an *equal* or *per capita* share. And as we emphasize later, it wasn't possible to give class members an exact breakdown of what a proportionate share would be when the notice was sent.

Nor was the notice inadequate because it didn't estimate the class members' recovery. In general, it would be difficult, if not impossible, for parties to reliably predict the number of valid claims when drafting notices. Indeed, the Longform Notice acknowledges this difficulty: "The amount of this payment will depend on how many Settlement Class Members file valid claims and how each Settlement Class Member answers questions in the Claim Form." J.A. 203.

And even if an estimated recovery is appropriate in some cases, McAdams makes no compelling argument for one here. There's nothing in the record suggesting the parties had a reliable method of estimating the percentage of class members who would file claims, let alone the average number of points they would claim. Nor could the parties know that the magistrate judge would approve the proposed award of attorneys' fees. Without some evidence proving an average recovery calculation would be reliable, we think it inappropriate to impose such a requirement. *See, e.g*, *Does 1-2 v. Déjà Vu Servs., Inc.*, 925 F.3d 886, 901 (6th Cir. 2019) ("Objectors cite no authority that requires a notice to state how much money each class member would receive, nor do they explain how the notice could have accurately stated the amount each [class member] was eligible to receive from the cash pool.").

In sum, we find the methods of notice here fairly apprised class members of the proceedings as well as their options. Class members had access to information about the total settlement, attorneys' fees, and distribution method. The notices also provided them with the means to find more information if they wanted it. Thus, the notices were adequate.

14

McAdams next contests the magistrate judge's finding that the settlement was fair, reasonable, and adequate. She asserts that the district court neglected to estimate the average recovery, and thus the settlement fund won't adequately compensate the class members. "We review a district court's approval of a class-action settlement for an abuse of discretion." *In re Lumber Liquidators*, 952 F.3d at 483.

Rule 23 requires courts to find that class settlements are "fair, reasonable, and adequate" before approving them. Fed. R Civ. P. 23(e)(2). When reviewing the adequacy of a settlement, the court must consider "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified." *Id.* at 23(e)(2)(C). We have identified five other factors for assessing a settlement's adequacy: "(1) the relative strength of the plaintiffs' case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendant[] and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement." *In re Lumber Liquidators*, 952 F.3d at 484 (citing *In re Jiffy Lube*, 927 F.2d at 159).

Here, the magistrate judge considered the three relevant Rule 23(e)(2) criteria.[8] He found: (i) "[t]here was a great risk [for the plaintiffs] to proceed to trial given the logistical difficulties and Nationstar's defense"; (ii) "[t]he point system alloc[a]tion in the settlement agreement ensure[d] that those with the greater loss will be compensated to a greater degree"; and (iii) "the proposed attorneys' fees and costs in this case [were] fair and reasonable given the contentious nature of this case and the amount of time spent in litigation." J.A. 813–14.

The magistrate judge also weighed the five *Jiffy Lube* factors. He found: (1) "plaintiffs ha[d] viable claims"; (2) "Nationstar had very strong defenses"; (3) litigating the case to trial "would have likely been lengthy and it would certainly be quite, quite expensive"; (4) "Nationstar can pay the 3 million dollars"; and (5) "[o]nly 137 class members have opted out of the settlement, which is about 0.04 percent of the settlement class." J.A. 810, 813–14.

McAdams doesn't claim that the magistrate judge failed to address these factors; nor does she argue that he improperly weighed them. Instead, she complains that the magistrate judge "failed to make a 'rough estimate' of what class members would have received had they prevailed at trial." Appellant's Br. at 25. But we have never required such an estimate. Even the out-of-circuit cases McAdams cites don't require an estimate in every case. *See Lusk v. Five Guys Enters. LLC*, No. 17-cv-00762, 2019 WL 7048791,

---

[8] The parties haven't argued that there's any "agreement required to be identified" here. Fed. R. Civ. P. 23(e)(2)(C)(iv).

at *7 (E.D. Cal. Dec. 23, 2019) (explaining that a rough estimate of a plaintiff's recovery is "meaningless" when one of its components lacks "factual and evidentiary foundation"). And we're not persuaded to impose this new requirement here.

In any event, while the magistrate judge didn't estimate the potential recovery should the case proceed to trial, he found that most class members "probably only had nominal damages." J.A. 812. That's consistent with the resulting settlement. At the fairness hearing, the judge said that 13.8% of the nearly 350,000 class members submitted claims. He also noted that $1,300,000 in attorneys' fees and costs would be deducted from the $3,000,000 fund. Using only that information, one could roughly estimate that the average class member would recover $35, an amount that would adequately compensate a plaintiff with only nominal damages.

We're satisfied that the magistrate judge correctly analyzed all the relevant Rule 23 criteria and thus didn't abuse his discretion in finding the settlement agreement adequately compensated the plaintiffs.

V.

Fourth, McAdams argues the settlement release is "ambiguous, overbroad, and beyond the permissible scope of release for class action settlements." Appellant's Br. at 17. We disagree.

A court can approve a release of claims that share an "identical factual predicate" with claims alleged in a case. *Berry v. Schulman*, 807 F.3d 600, 616 (4th Cir. 2015). Claims have an "identical factual predicate" when they "depend[] upon the very same set

17

of facts." *TBK Partners, Ltd. v. W. Union Corp.*, 675 F.2d 456, 460 (2d Cir. 1982) (quoting *Nat'l Super Spuds, Inc. v. N.Y. Mercantile Exch.*, 660 F.2d 9, 18 n.7 (2d Cir. 1981)). We have twice held that a class action settlement can dispose of unalleged claims relying on an identical factual predicate. *In re MI Windows & Doors, Inc., Prod. Liab. Litig.*, 860 F.3d 218, 225 (4th Cir. 2017); *Berry*, 807 F.3d at 616.

Here, the release provides that "each Settlement Class Member . . . will be deemed to have . . . discharged the Released Parties . . . from all actions . . . in connection with the submission of loss mitigation applications during the Class Period." J.A. 186. As the magistrate judge recognized, this is "a broad release." J.A. 816. It encompasses a large swath of claims that might have been brought. But nothing on the face of the release purports to apply to cases with a different factual predicate. Rather, the release is tied to cases arising out of a set action and time frame.

Our inquiry ends there. Neither we nor the magistrate judge can decide the outer limit of the release's scope. To do so would be advisory. *See Pelt v. Utah*, 539 F.3d 1271, 1285 (10th Cir. 2008) ("It is well settled that a court adjudicating a class action cannot predetermine the res judicata effects of its own judgment; that can only be determined in a subsequent suit."). Whether the release covers claims not alleged in class action complaint is for a court enforcing the release to decide.

In fact, that's exactly what happened with McAdams's California claims. In that case, McAdams alleges that Nationstar violated California law by falsely telling her that it was processing her loan modification application while it continued to foreclose on her

18

home. *McAdams*, 2021 WL 4462909, at *1. The California court considered the release's scope and found that her claims weren't barred. *Id.* at *4–6.

The magistrate judge didn't abuse his discretion in approving the release.

VI.

Finally, McAdams contends that the magistrate judge abused his discretion by approving the $1,300,000 attorneys' fee request. She raises three challenges to this ruling: (1) the magistrate judge didn't comply with Rule 23(h)(3)'s requirement that he "find the facts and state [his] legal conclusions"; (2) the attorneys' fee award constitutes an unacceptably large portion of the overall award; and (3) the "clear sailing" provision is impermissible. All three challenges fail.

"We [] review an award of attorney's fees for an abuse of discretion." *In re Lumber Liquidators*, 952 F.3d at 483. Thus, our "review is sharply circumscribed, and [the] fee award must not be overturned unless it is clearly wrong." *Berry*, 807 F.3d at 617 (cleaned up).

A.

McAdams's first argument is frivolous. True, the magistrate judge had to "find the facts and state [his] legal conclusions." Fed R. Civ. P. 23(h)(3). But he did so. He stated at the fairness hearing: "Both sides are represented by skilled counsel[,] and I have concluded that the proposed attorneys' fees and costs in this case are fair and reasonable given the contentious nature of this case and the amount of time spent in litigation." J.A. 813. The judge elaborated:

19

I don't accept and I reject Ms. McAdams' suggestion that the settlement was somehow collusive with respect to plaintiffs' attorney fees. The parties negotiated the settlement at arm's length in the midst of contentious litigation. Ms. McAdams complained that because defendants do not object to the attorneys' fees request, the Court is deprived of the necessary adversary process to determine a reasonable award, the whole clear sailing provision. But Ms. McAdams herself only presents general arguments about the fee award. She doesn't cite to any work that counsel performed that was unwarranted or unnecessary or duplicative or provide evidence that the rates charged by counsel are unreasonable. An award of 1.3 million dollars for attorneys' fees and expenses is reasonable in this case. Class counsels' fee award is based on the presumptively reasonable rate set forth in our court's local rules. Class counsel has supported their request of [sic] billing records and other competent evidence to support their request. Lawyers routinely complain that these rates are too low, especially the rates that pertain to more experienced attorneys. Counsel seeks 86 percent of their reasonable fee under the lodestar method. This is a significant reduction. The Court has reviewed class counsels' motion for attorneys' fees and finds that the fees claimed are reasonable.

J.A. 817–18.

Because the magistrate judge "referred to Plaintiffs attorneys' substantially uncontradicted evidence and arguments that the requested fees are justified by their work on the case," he complied with Rule 23(h)(3). *CLRB Hanson Indus., LLC v. Weiss & Assocs., PC*, 465 F. App'x 617, 619 (9th Cir. 2012).

### B.

McAdams's second argument, that the attorneys' fees constitute an unacceptably large portion of the overall settlement, fares no better. There are two main methods for calculating the reasonableness of attorneys' fees—the lodestar method and the percentage-of-recovery method. The lodestar method calculates reasonable fees "by multiplying the number of reasonable hours expended times a reasonable rate." *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013) (cleaned up). "[T]here is a 'strong presumption' that the

20

lodestar figure is reasonable." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010). The percentage-of-recovery method considers the portion of the total settlement fund that will go to attorneys' fees. *In re Lumber Liquidators*, 952 F.3d at 481. A district court may choose the method it deems appropriate based on its judgment and the facts of the case. *See Jones v. Dominion Res. Servs., Inc.*, 601 F. Supp. 2d 756, 760 (S.D. W. Va. 2009) ("The Fourth Circuit has neither announced a preferred method for determining the reasonableness of attorneys' fees in common fund class actions nor identified factors for district courts to apply when using the percentage method.").

Here, the magistrate judge chose the lodestar method for assessing the fee request. Using the presumptively reasonable rates set forth in the District of Maryland's Local Rules, class counsel documented earned fees of $1,261,547.50. *See* D. Md. Local R. App. B(3). They also proved $217,657.26 in unreimbursed expenses, for $1,479,204.76 in costs and fees. But counsel requested only $1,300,000. As the magistrate judge correctly recognized, we presume that figure is reasonable because it's less than the lodestar figure.

McAdams doesn't challenge counsel's billing practices. Instead, she contends the fee award isn't reasonable under the percentage-of-recovery method. Counsel's fees totaled $1,300,000, 43% of the common fund. We acknowledge that this percentage approaches the upper limit of a permissible recovery. But it isn't unheard of. *See In re SmithKline Beckman Corp. Sec. Litig.*, 751 F. Supp. 525, 533 (E.D. Pa. 1990) ("Courts have allowed attorney compensation ranging from 19 to 45% of the settlement fund created."). Because the fee award isn't so far afield of a standard recovery, we can't,

21

without more, find that the percentage-of-recovery calculation outweighs the strong presumption that the award is reasonable.

C.

Nor does McAdams's third argument, that the fee award is unreasonable due to the "clear sailing" provision, hold water. "[Clear sailing] agreements are troubling because they demonstrate that class counsel negotiated some aspect of their fee arrangement with the defendant, when counsel's ethical obligation is to the class." *Newberg on Class Actions* § 13:9 (5th ed.). But they are "not per se unreasonable." *Bezdek v. Vibram USA, Inc.*, 809 F.3d 78, 84 (1st Cir. 2015). "Rather, courts are directed to give extra scrutiny to such agreements." *Id.*; *accord In re Southwest Airlines Voucher Litig.*, 799 F.3d 701, 712–13 (7th Cir. 2015); *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 949 (9th Cir. 2011).

That's precisely what the magistrate judge did here. He rejected the "suggestion that the settlement was somehow collusive" and found that the parties negotiated the settlement "at arm's length in the midst of contentious litigation" that spanned six years and included "a Motion to Dismiss, two Motions for Summary Judgment, a contested Motion for Class Certification, numerous discovery motions, [and] numerous depositions." J.A. 807, 817. And he noted that class counsel "supported their request [with] billing records and other competent evidence." J.A. 817.

McAdams doesn't challenge these findings. Offering only generalized objections to clear sailing provisions, she doesn't point to a single example in the over 150 pages of billing records indicating class counsel breached their ethical obligations.

22

We reject McAdams's challenge to the fee award.

VII.

For the reasons given, the magistrate judge's judgment is

*AFFIRMED.*